## BRAASCH v. MICHIGAN STOVE CO.[1]

1. Master and Servant—Personal Injuries—Child Employé—Statute—Violation—Knowledge of Master.

   That a master employing a boy under the age of 16 at a dangerous employment in violation of Act No. 113, Pub. Acts 1901, was deceived in respect to his age, to which deception the boy was a party, does not estop the boy from maintaining an action for damages resulting from a personal injury received in such employment.  *Syneszewski* v. *Schmidt*, ante, 438, followed.

2. Evidence — Experts — Opinions — Competency — Matters of General Knowledge—Judicial Notice—Harmless Error.

   Though it was incompetent to call an expert to prove that an electric freight elevator was a place of danger to life and limb, that being a question of fact which the jury were as competent to decide without expert evidence as with it, the error in doing so was harmless in a case where plaintiff, a boy of 14, lost his foot in consequence of placing it over the edge of the floor of the elevator, since the court will judicially notice that a freight elevator is a place of danger to life and limb in the hands of an inexperienced boy of 14.

   ---

   [1]Rehearing denied November 30, 1908.

3. DAMAGES — PERSONAL INJURIES — EARNING POWER — INSTRUC-
TIONS.

In an action by a minor for personal injuries, instructions ex-
amined, and *held*, not open, when construed as a whole, to
the objection that they permitted the jury to award dam-
ages for plaintiff's earning capacity for the period interven-
ing the trial and the time when he should reach majority, a
time during which his earnings belonged to his father.

4. SAME—EXCESSIVENESS.

An award of $4,000 to a boy of 14 for having his foot crushed
between the floor of an elevator and the floor of the building,
*held*, not so excessive as to require reversal or make it error
to deny a new trial.

Error to Wayne; Brooke, J.  Submitted June 12, 1908.
(Docket No. 34.)  Decided July 13, 1908.

Case by Edward A. Braasch, by next friend, against
the Michigan Stove Company for personal injuries.
There was judgment for plaintiff, and defendant brings
error.  Affirmed.

*Bowen, Douglas, Whiting & Murfin*, for appellant.

*William Van Dyke* (*James H. Pound*, of counsel), for
appellee.

HOOKER, J.  The defendant, a corporation engaged in
the manufacture of stoves, employed the plaintiff and set
him at work running an electric freight elevator in its
factory.  A few hours later he was injured, his foot being
crushed between the elevator and a floor.  It is obvious
that this happened by reason of his foot being allowed to
extend over the edge of the floor of the elevator, as it
approached the fifth floor of the factory from below.  He
recovered upon this, the second trial of the cause, a ver-
dict and judgment for $4,000, and a new trial having
been denied, the defendant has appealed.

The plaintiff gave testimony tending to show that at
the time of his employment he was 14 years and 8 months
old, and it is claimed on his behalf that such employment

was in violation of sections 2 and 5 of Act No. 113, Pub. Acts 1901, and conclusive evidence of defendant's negligence. The defendant produced testimony tending to show that application for work was made on behalf of the plaintiff, by his cousin, one Meyers, an employé of the defendant; that later he was told by defendant's superintendent to bring the plaintiff to the factory. He did so, and at the interview Callan, the superintendent, in plaintiff's presence, asked Meyers: "How old is he? Has he got papers?" and Meyers answered: "Why, no, he doesn't need any papers. He is as big as you (Callan) are;" that he (Callan) told plaintiff to stand up, which he did, and that he was at least two inches taller than Meyers. He was therefore employed, and soon after placed under the charge of a man then running the elevator, with directions to the latter to instruct him in his duties, and to stay with him until he had learned it all. It is defendant's contention that the superintendent was deceived by the statement of Meyers into the belief that the plaintiff was more than 16 years of age, and that the plaintiff was a party to such deception, and estopped from making a claim that the defendant was guilty of a violation of the statute. The learned circuit judge left the cause to the jury and a verdict for $4,000 followed.

The cause is before us for a second time. In our former decision (147 Mich. 676), we reversed the judgment previously rendered in favor of the defendant, holding that the plaintiff had a right to have the verdict of a jury upon the following questions, viz.:

"Whether the employment of a boy under 16 to run an electric freight elevator is within the prohibition of section 3, Act No. 113, Pub. Acts 1901, as endangering life or limb, is a question for the jury.

"In an action by a boy under 16 for injuries received in operating an electric freight elevator, evidence examined, and *held*, that whether he should have had other and further instructions as to the danger incident to his employment, and should have been warned of its dangers, were questions for the jury."

Upon the present record it is claimed that the court erred in refusing to give defendant's 7th request, i. e. :

"It appears from the testimony of the witnesses Braasch, Meyers and Callan that it was represented to Callan, the superintendent of the Michigan Stove Company, that the plaintiff, Braasch, was of the age of 16 or over, and if you believe that Mr. Callan employed Braasch relying upon the statements made in Braasch's hearing, by Meyers, that he did not require any papers, then the defendant did not in any way violate the provisions of Act No. 113 of the Public Acts of 1901, in reference to the employment of persons under 16 years of age, and the plaintiff cannot recover."

It is urged that the record conclusively shows that the defendant was deceived in regard to the age of the plaintiff, and that he, the plaintiff, should therefore be estopped from claiming damages upon the ground of a violation of the statute. One who deliberately falsified regarding his age to get employment is not entitled to much sympathy, in a suit against the employer, whom he has deceived, in an action based upon the statute. It is said that he should be estopped from recovering on such a claim. We held the contrary in the case of *Syneszewski* v. *Schmidt*, ante, 438.

A witness was called by plaintiff's counsel, as an expert, to prove that a freight elevator was a place of danger to life and limb. Counsel truly say that this was a question which it was the province of the jury to decide, and there is force in the contention that it was not competent to call witnesses to decide it for them. We understand that this injury was not the result of any inherent and hidden danger involved in the use of the machine, but was the obvious consequence of placing a foot over the edge of the floor of the elevator, voluntarily or involuntarily. This was as apparent to a juror as anyone, and the jurors could decide that it was so, as well without the opinion of the expert as with it. We think the testimony was within the rule laid down in *Melzer* v. *Car Co.*, 76 Mich. 94, and other cases cited in appellant's brief.

But this was harmless error, for we will take judicial notice that a freight elevator is a place of danger to life and limb in the hands of an inexperienced boy of 14 years. The legislature has seen fit to forbid the employment of such persons for the management of dangerous machinery, fixing the age limit at 16 years. An elevator, like many other machines, is a reasonably safe machine under proper management, but accidents are not infrequent. Any construction of the statute which does not take into account the inexperience and natural heedlessness of children overlooks an important consideration. Undoubtedly it was passed to protect children against accidents, which in adults might well be said to result from negligence on the part of the victim, but which in children would be largely due to a want of experience, or heedlessness, for which experience is ordinarily the only cure. Without implying that a child can never be chargeable with contributory negligence in such a case, it may well be said that all so-called heedlessness may not be negligence. But this may perhaps be thought a digression. The point of it all is that we feel justified in saying that the management of an elevator passing floors as this did, is an occupation dangerous, within the meaning of the statute, to the life and limb of a boy of 14 years of age. It is not a question of the obviousness of the danger, but whether the occupation is one attended with dangers which a child would not be competent, in view of childish habits and instincts, to understand or avoid. The case of *Allen* v. *Jakel*, 115 Mich. 484, was a case involving an obvious danger, but it was held that an increased obligation, growing out of the ignorance and inexperience of childhood, rested upon one who would employ a child. This did not involve a statute against child labor, and the case was a recognition of an increased duty of instruction growing out of immaturity of the employé. See, also, *Sterling* v. *Carbide Co.*, 142 Mich. 284, where we said that "the statute * * * clearly recognizes that a child under 16 years is immature in judgment."

Error is assigned upon the following charge:

" He is entitled, further, gentlemen of the jury, to recover damages for his decreased earning capacity if you find from the evidence in this case and from your observation from the injured limb that during his lifetime his earning capacity will be decreased by reason of the injury."

It is said that this permitted the jury to award damages to his earning capacity for the period intervening the trial and the time when plaintiff should reach the age of 21 years, a period somewhat over a year, which counsel claim was a right belonging to his father and not to him, upon the theory that his father was entitled to his earnings for that time, no proof of emancipation being offered. From the charge itself we take the following:

" If you resolve all these questions, gentlemen of the jury, in favor of the plaintiff, you will then consider the question of damages. I charge you, *first*, as to what damages he cannot recover. He cannot recover for any medical attendance or doctor's bills, to start with. He cannot recover for any time lost during the time that he was ill. I think the testimony shows that there was about a year that he was unable to get work. He is an infant, and under the law his time at this time would belong to his father, and there is no evidence in the case that his father manumitted to him or gave him his own time, so that that element of damage is not in the case for your consideration. He is entitled to recover, gentlemen of the jury, if you find under my instructions that he is entitled to recover, he is entitled to recover for his pain and suffering, not alone what he has suffered in the past, but what you find he will suffer in the future as the direct and necessary result of the accident. He is entitled to recover for the inconvenience and the humiliation which you find that he will suffer by reason of his crippled condition, if you find that his condition will entail either inconvenience or humiliation in the future. Now, gentlemen of the jury, both of these elements of damage are elusive. It is hard to determine accurately what the plaintiff is entitled to for the value of that pain or suffering or inconvenience and humiliation. As I have said before, they can neither be

weighed nor measured. They ought never to be oppressive, but they ought to be full and fair compensation for those elements. They must in the last analysis be referred to the exercise of the judgment of twelve honest men, intent only upon doing the right thing between these two parties.

"He is entitled further, gentlemen of the jury, to recover damages for his decreased earning capacity, if you find from the evidence in this case and from your observation from the injured limb, that during his lifetime his earning capacity will be decreased by reason of the injury. There is no testimony in the case tending to show that since the happening of the injury up to the present time, his earning capacity has been decreased. But I am still of the opinion that you may, viewing the foot and taking into consideration the condition in life of the plaintiff, that you are the judges as to whether or not such an injury will result in a decreased earning capacity through the life of this boy; and if you find that the injury is such a one as to decrease his capacity to earn a livelihood, then your verdict should include such a sum as will fairly compensate him for that decrease, if you find it to exist."

The jury were explicitly told that he could not recover for lost time while ill, and that his time during the year that he could not get work belonged to his father. But he afterwards allowed them to find damages through his lifetime if they should find that his earning capacity will be decreased, etc.

The defendant's counsel did not call attention to the question now raised in any request to charge, although plaintiff's 6th request plainly claimed damage for loss of earning capacity. Nor did they, when the charge was given, call attention to the omission to notice the period of a year or two between the trial and the time when he would reach his majority. Had they done so, no doubt the judge would have said to the jury expressly what he had impliedly said before as to failure to get work, that he had no right to recover for lost earning capacity prior to his majority. Under the former and fairer practice of requiring exceptions to be taken before the return of a verdict, the court and plaintiff would have been protected

against errors of this kind, and the statute allowing assignments of error upon the charge, after judgment, and without exception, is productive of injustice, affording as it does the opportunity for raising points before us which have not been brought to the attention of the trial court. It certainly is not conducive to the administration of justice, that just and hard earned verdicts and judgments procured at large expense should be lost through the intentional or inadvertent omission of opposing counsel to carefully cover all points involved before the trial court and his right based on a recent statute to raise them later in this court. Thereby the plaintiff is made an insurer of the accuracy of all the instructions of the trial court, and the defendant is relieved from the necessity of bringing all points that he intends to rely on before the trial court. There is nothing in this case to indicate any intentional omission of counsel to raise this point before verdict. On the contrary, we have every reason to believe that their conduct of the case was eminently fair. What has been said is merely to call attention of the bar to the injustice of the existing statute eliminating exceptions to the charge, and the manifest injustice that has followed its enactment, in the many cases which we have been obliged to reverse upon comparatively unimportant points. We think, however, that the charge, when it is all read together, shows that the learned circuit judge intended that the jury should not award any damages for lost earnings during plaintiff's minority, and it would be a stupid juryman who would render a verdict for decreased earning capacity covering a period when the earnings if made would not belong to the plaintiff. He expressly told them that he could not recover for time already lost, whether from inability to get work or want of ability to work, for the reason that he was an infant during this time and his father had not emancipated him.

It is not unreasonable to presume that every citizen competent to act in the capacity of juror knows that a person is an infant and that his father is entitled to his services

until he reaches the age of 21 years.   We find nothing to indicate a claim to the contrary in this record, and we feel warranted in the conclusion that court, counsel and jurors must all have understood that recovery for increased earning capacity must commence when the plaintiff became his own master.

We are not convinced that the verdict was so excessive as to require a reversal, or that the court erred in denying a new trial.

The judgment is affirmed.

GRANT, C. J., and MOORE, CARPENTER, and McAL-VAY, JJ., concurred.