SCHUETZ v. VAN ORMAN.

1. MASTER AND SERVANT—INFANTS—LABOR LAW—EMPLOYMENT AT DANGEROUS OCCUPATION.

Where plaintiff was an infant under thirteen years of age employed in a laundry in running a mangle, and the evidence showed that her hand was caught under the rolls and severely burned, necessitating its amputation, plaintiff's testimony tending to show that she received no instruction as to the dangers of doing the work or the proper methods of avoiding them, did not warrant defendants' claim that there was a variance between the declaration and proofs which tended to show lack of instructions and plaintiff's want of knowledge of dangers incident to her work, supported by evidence tending to show that other employees were also uninformed as to the proper methods of operating their machines; the court did not err in overruling the objection based upon the ground of a variance from the declaration which counted upon the violation of Act No. 220, Pub. Acts 1911.

2. SAME—CONTRIBUTORY NEGLIGENCE.

The charge of the court considered and *held*, to submit to the jury in a sufficient manner the question of plaintiff's alleged contributory negligence.

3. SAME—SPECIAL QUESTIONS—TRIAL—JURY.

There was no reversible error committed at the trial of

such action in the refusal of the court to submit to the jury a special question whether plaintiff was engaged in attempting to straighten out a wrinkle in the cloth which she was running through the machine at the time of her injury: the question was not decisive of the issues.

4. DAMAGES—EXCESSIVE VERDICT—NEW TRIAL.
Five thousand five hundred dollars for loss of plaintiff's right hand was not so excessive as to require the court to set aside the verdict and judgment.

Error to Jackson; Parkinson, J. Submitted January 26, 1915. (Docket No. 84.) Decided March 17, 1915.

Case by Emilie A. Schuetz, by next friend, against Fred Van Orman and another for personal injuries. Judgment for plaintiff. Defendants bring error. Affirmed.

*Price & Whiting* and *A. O. Reece,* for appellants.

*Thomas M. Poynton,* for appellee.

MOORE, J. The plaintiff, then 12 years and 3 months old, was employed to work in the laundry department of a hotel conducted by the defendants. While so employed, she was injured, for which injuries this suit was brought. The case was tried before a jury. From a judgment in favor of the plaintiff for $5,500, the case is brought here by writ of error.

The declaration was a very long one, containing two counts. In one of them are the following averments:

"And plaintiff avers that heretofore, to wit, on the 22d day of April, A. D. 1912, the said Emilie Schuetz, an infant, was employed by the said defendants, by and through their certain servants, to work in said laundry plant in the said hotel. * * *

"Plaintiff avers that Public Act No. 285, passed by the legislature of the State of Michigan in the year A. D. 1909, as amended by Public Act No. 220, passed

by the legislature of the State of Michigan at its regular session of 1911, was, at the time of the committing of the grievances hereinafter mentioned, in full force and effect, and in accordance with the provisions thereof it thereupon became and was the duty of said defendants, as proprietors of said hotel and said laundry plant in said hotel and by and through their said servants in charge thereof at the time and place aforesaid, to exercise such reasonable care and caution in the employment of its servants in and about the said laundry in said hotel as required by the provisions of said statute; and it thereupon became and was the duty of said defendants, by and through their said servants in charge of said hotel and laundry at the time and place aforesaid, to comply with the mandatory provisions of said statute respecting the precautionary measures to be taken upon the employment of minors under the age of 16 years, and to obey the inhibition of said statute, which prohibits the employment of minors under the age of 14 years. Yet the defendants, not regarding their duty in that behalf, by and through their said servants and agents in charge of said hotel and laundry, employed said Emilie Schuetz, a minor under the age of 14 years, and on the 22d day of April, 1912, placed her at work in said laundry in the said hotel about the said laundry machinery, and at an employment which was dangerous to life and limb for a child of her tender age and immature judgment; and in the employment of said child the said defendants, by and through their certain servants in that behalf, neglected and failed to exercise reasonable care and caution to procure. * * * And in this regard the said defendants, carelessly and negligently, and without regard to the inhibition of said statute which prohibits the employment of minors under the age of 14 years, employed said Emilie Schuetz, a minor 12 years and 3 months of age, without taking the precautionary means provided by said statute with reference to procuring of a permit, and registering birthplace, age, etc., of said child, as by said statute required.

"Plaintiff avers that, by and through the negligence and carelessness of the defendant as aforesaid, the said Emilie Schuetz was employed by the said defendants by and through their certain servant or agent

in that behalf on the 22d day of April, A. D. 1912, and was placed at work in said laundry about the said laundry machinery, as hereinafter set forth, and carelessly and negligently suffered and permitted the said child to continue in said employment until, to wit, the 2d day of May, A. D. 1912, when she sustained the damages hereinafter mentioned; and plaintiff avers that the negligence and carelessness of the defendants, as aforesaid, contributed to and caused the injuries for which plaintiff seeks to recover damages herein.

"Plaintiff avers that while she, the said Emilie Schuetz, was in the performance of her duties as a servant of the defendants, on, to wit, the 2d day of May, A. D. 1912, at, to wit, in the said laundry plant in said Otsego Hotel, in the county and State aforesaid, and while the said laundry machine, to wit, said mangle, was in operation with its said heated cylinder and auxiliary rollers and automatic feeding apron in rapid motion, and while this plaintiff, together with a certain other servant of the defendants, was engaged in the work of feeding said mangle, that is to say, in inserting a certain article, to wit, a cotton sheet, into the said machine and between said hot cylinder and said auxiliary rollers upon the said automatic feeding apron, and while said Emilie Schuetz, in the performance of her duties, was getting said cotton sheet into the machine, and using her hands for the purpose of straightening out a crease in said sheet, and while doing so her right hand was near one of said auxiliary rollers and said automatic feeding apron then in rapid motion, and her right hand then and there came in contact with said roller and feeding apron, and was drawn underneath the said roller on top of said feeding apron and between said roller and said hot cylinder, with great force and violence, and plaintiff's right hand became wedged there while said machine propelled by electric power as aforesaid continued in motion, and plaintiff's said hand remained there until the same was released by certain other servants of the defendants, who came in response to her cries for help, and thereby plaintiff, Emilie Schuetz, sustained the injuries for which she seeks to recover damages herein.

184 Mich.—31.

"Plaintiff avers that during the time she was in the employ of said defendants, as aforesaid, she was not instructed by said defendants nor any other persons as to the dangers to life and limb attending the operation of said machine, to wit, said mangle; nor was she, the plaintiff, at any time or place during her lifetime instructed as to the dangers incident to the operation of the said machine; and she, the plaintiff, being a child of tender years and immature judgment, did not understand and comprehend the perils and dangers incident to her said employment and the danger of having her hand drawn into the said machine in the event of her hand coming in contact with one of the said auxiliary rollers to said heated cylinder or with said automatic feeding apron while the said rollers, automatic feeding apron, and hot cylinder were then in rapid motion by means of electric motive power as aforesaid."

There was much more of this count which we find it unnecessary to insert here. The defendants pleaded the general issue. The plaintiff was sworn. Her testimony in part is:

"Was 14 years old the 20th of January this year. * * * Lost my hand two years ago in May. I was injured at the Otsego Hotel. Worked there nine and a half days. When I went to get employment, I talked with Mr. Lang. * * * Monday morning I went to the Otsego Hotel. I was about an hour late. * * * When I went to the hotel, Mr. Lang, he wasn't in there, and there was a man named Charlie; I don't know who he is. He says: 'You can step in here at the storeroom. You can step in here and wait for Mr. Lang.' And I waited. I can't say how long I waited, probably about 10 or 12 minutes, and Mr. Lang came in, and I said I was the girl that was going to come with Lena, and he said, 'All right,' and he took me to the laundry, and he says, 'Pete, here is a girl for you,' and Pete says, 'All right,' so Pete put me in with Blanche.

"*Q.* Was that all that was said between you and Mr. Lang that morning?

"*A.* It certainly was.

"*Q.* Did he ask you any other questions at all?

"*A.* No, sir; he didn't.

"*Q.* Did Pete ask you any questions?

"*A.* No, sir; he didn't.

"*Q.* What did Pete say to you then?

"*A.* He didn't say anything to me. I had my coat and hat on. He told me to hang them up on a nail there. Then he said, 'You can go and help the girls.'

"*The Court:* Wasn't there anything said about how much pay you would have?

"*A.* No, sir. * * * Pete is the boss of the laundry. He is the man who has been here in the courtroom they call Voorheis. I don't know his last name. They always called him Pete. * * *

"*Q.* Did Pete give you any instructions about the work there that morning?

"*A.* No, sir.

"*Q.* Had you ever worked any place before?

"*A.* No, sir.

"*Q.* Did you have any other talk with Mr. Lang at any time while you were there?

"*A.* Mr. Lang came one day and asked me my name, and that was all he ever asked me. I gave him my name as Emilie Smith, because so many laugh at my name. He didn't ask me anything about my age. Those were the only conversations I ever had with Mr. Lang. Pete never talked to me after that. I didn't know where they were going to put me working when I went in there. Never worked about machinery before that time. Had no knowledge of laundry machinery when I went to work there.

"*Q.* Did any person in that laundry explain to you the working of the machinery in the laundry there?

"*A.* No, sir. * * * *"

Mr. Lang's version of the hiring is as follows:

"I first saw the plaintiff on Monday morning, the 21st or 22d of April, between 10 and 11 o'clock. She was standing by the mangle at that time. I called her to one side and talked with her. * * *

"*Q.* Tell the jury what talk you had with this girl.

"*A.* I called her off one side, and asked her what her name was, and she told me her name was Emily Smith. I says, 'Where have you worked before?' and she told me she worked at some box factory. I says,

'How old are you?' and she told me she was 17 and would soon be 18, and that was all. I took the slip and left. That was the last conversation I had with her until she got hurt.

"*Q.* How did she look, how was she dressed that morning?

"*A.* Her hair was done up on top of her head in kind of a wad up here, and she had a long skirt on, and she had a waist—the waist had a string tied around the middle of it. She looked 17 or better— 17 or older. I didn't question her after that."

Plaintiff testified that she was not instructed as to the dangers incident to her employment. A photograph of the mangle was in evidence. It shows a large heavy machine with a central roll or cylinder 2 feet in diameter and $8\frac{1}{2}$ feet long, with a number of rolls of the same length, but smaller, revolving with the central roll; the faces of the rolls coming near to each other. When in operation, the large cylinder was steam-heated. The first roll at the front was about $3\frac{1}{2}$ inches in diameter and is called a guard roll beyond which the hand of the operator is not expected to be put. The sheets, tablecloths, and other articles to be ironed were smoothed out and engaged with an endless cloth apron which carried them forward between the rolls, bringing the article in contact with the steam-heated roll, and when it issued on the rear of the machine it was completely ironed.

The evidence indicates that when the mangle was started it was allowed to run continuously until the work for the day was done, and that plaintiff, though she was working the tenth day when she was hurt, did not know how to stop or start the machine. Some of the other employees were also ignorant of how this was done. Plaintiff's version of how the accident happened is as follows:

"*Q.* On the day you were hurt, Emilie, what were you doing? * * *

"*A.* I was putting a sheet through, and there was

a wrinkle, and I was trying to straighten it out, and it caught my hand.     *     *     *

"Q. Point out to the jury on the picture just what part of the mangle, where it was your hand got caught in the rolls?

"A. (Indicating.) Right here between the wooden roller and the other roller.

"Q. I want you to tell the jury just what happened when your hand got caught?

"A. I don't remember. I fainted away.

"Q. What were you doing just immediately before your hand got caught?

"A. I was straightening out a wrinkle.

"Q. Which way were you facing?

"A. Facing the mangle.

"Q. Were you standing up or sitting down?

"A. Standing up.

"Q. State whether or not you were laughing or looking out of the window, or anything of that kind, at that time?

"A. No, sir; I was not.

"Q. When did you come to your senses after you fainted?

"A. At the hospital.     *     *     *"

She also testified that when she was trying to straighten out the wrinkle in the cloth she was doing as she had been shown to do. She denied that when she sought employment she was dressed in long clothes, or that she stated she was 17 or 18 years old. The record shows that when her hand passed between the rolls, until it came in contact with the heated roll, it was held there until a wrench could be procured and several nuts removed from bolts, and the rolls separated so the arm and hand could be removed. The hand was afterwards amputated above the wrist.

The plaintiff was corroborated by another witness as to how the accident happened, and as to the instruction to straighten the wrinkle in the way she was attempting to do it.

It is claimed by counsel that plaintiff was properly instructed by Blanche Degrovich. It is true this wit-

ness, who was 19 years old, showed her how to smooth out the articles and pass them through the machine; but the record fails to show any instruction as to the dangers incident to the employment. The witness testified through an interpreter. She testified in part:

"*Q.* The only one who showed Emilie anything about that machine or about that work was what you showed her?

"*A.* She says she is the only one.

"*Q.* Did you ever explain to Emilie anything about that mangle?

"*A.* She says no, she didn't know anything about that herself. * * *

"*Q.* Will you please state just what you showed Emilie?

"*The Court:* Tell her to tell us what she showed Emilie and all she told her about how to do her work on the mangle.

"*A.* She says she show Emilie just the same as she had to do, folding napkins, sheets, and everything, and put them—

"*Q.* (Interrupting.) Was that all she did?

"*A.* Yes, that's all.

"*The Court:* Did you tell her not to get her hand into the machine?

"*A.* She says no.

"*Q.* Why didn't you?

"*A.* She says she didn't know herself.

"*Mr. Price:* Didn't know herself?

"*A.* She says she showed her the way she did it.

"*Q.* Ask her how she did it. * * *

"*Q.* You never knew yourself there was any danger of getting your hand caught in the way Emilie got her hand in there, did you?

"*A.* She says she didn't know that.

"*Q.* You never told Emilie not to put her hand over that wooden roller, did you?

"*A.* She says no.

"*Q.* Did you know yourself what that wooden roller was for?

"*A.* She says no.

"*Q.* When a sheet or tablecloth or other article

would get wrinkled as it passed under the big roller, what would you do?

"*A.* She says Pete tell her to straighten out some way. She says if they won't Pete would give them hell.

"*Q.* If they wouldn't straighten out the wrinkles, Pete would give them hell; is that what she says?

"*A.* She says yes.

"*Q.* Just tell us what you mean by that. What do you mean by the words, 'Pete would give them hell?' Explain what he would say.

"*A.* She says sometimes she can't help herself, can't help it the sheet wrinkling up in the rollers, and that's the reason Pete would give them hell.

"*The Court:* She was asked to tell what it was Pete said that she called giving them hell.

"*A.* She says he told them to pay attention to it. They have to do it right.

"*Q.* Was that all that Pete would say?

"*A.* That's all.

"*Q.* As I understand it you were the only person who showed Emilie anything about her work there?

"*A.* She says yes.

"*Q.* Did any one else in the laundry other than yourself, as far as you know, ever show Emilie anything about her work?

"*A.* She says no.

"*Q.* How do you know that?

"*A.* She says she knows because she was working with her right along.

"*Q.* Did Pete, the foreman, ever give Emilie any instructions in your presence while you were there?

"*A.* She says no, never looked into it. She says Pete know when some of those girls know the work, and he didn't care.

"*Q.* In other words, Pete left the instruction part to you and the girls there?

"*A.* She says yes. She says because he saw they knew that and he just come around there and look at her and go away.

"*Q.* Did you ever explain to Emilie there was a heated cylinder in back of those rolls?

"*A.* She says she didn't know herself.

"*Q.* Did you know if you got your hand in under

that first padded roller there it might be crushed and burned?

"*A.* She says no, she didn't know that."

We have quoted just enough of the testimony to indicate the claims of the parties. There is a very long record. The cross-examination of the plaintiff alone occupies upwards of 50 pages of the printed record.

The record shows the following:

"The defendants submit the following special question to the jury to be answered by 'Yes,' or 'No':

"*Q.* Was the plaintiff, Emilie Schuetz, trying to straighten out a wrinkle in the cloth on the feeding apron with her fingers, with the palm of the hand down, when her hand got caught in the mangle?

"*The Court:* A question, to authorize its submission to be answered by the jury yes or no, must be one which is material to the case and if answered one way would dispose of it.

"*Mr. Poynton:* I object to that question.

"*The Court:* I am inclined to think that this question would not dispose of the case, is not so material as to be decisive of anything; and I will now, without any argument upon it, decline to submit it."

The charge to the jury was in part as follows:

"Now, this is what is termed among lawyers an action on the case for negligence. The relations between these parties were that of master and servant, as it is understood in the law: the defendants being the masters and this girl the servant. Now, in order for the servant to recover from the master for injuries received in the course of the employment, two things must be shown, and to which I may refer later. One is that the injury received was on account of the negligence of the master, or some one in his employ for whom he is responsible; secondly, that the person injured was in the exercise of due care for his or her own protection and did not by neglecting anything bring about or help to bring about, the accident or injury complained of. In other words, the fault must be the fault of the master entirely, and not the fault of both master and servant, because if the servant is

at fault, chargeable with lack of due care under all the circumstances and so helped to bring the injury upon herself, she cannot recover.   *   *   *

"I might say here, however, the fact an accident happened, or that plaintiff got her hand injured in the mangle, is not of itself, standing alone, evidence of negligence on the part of the defendants.

"And before you can give the plaintiff a verdict in this case you must be satisfied by the greater weight of the evidence that the plaintiff was hurt while engaged with another servant in feeding a sheet into the mangle.

"Now, gentlemen, it is claimed by the plaintiff that she was at the time under the age of 14 years, in fact but a few months over the age of 12 years, and that she is now slightly over 14; this accident happening on the 2d day of May, as I recall, two years ago.

"Now, gentlemen, if she was under 14 at the time she was employed and working there at the time this accident happened, then she was unlawfully employed. The statutes of this State forbid the employment of a child under 14 where there is dangerous machinery, and forbids their employment in a laundry, and she was not properly or lawfully employed in that place.   *   *   *

"Now, while this statute forbids the employment of a child under 14 where there is dangerous machinery, and in this instance, in a laundry for laundry is specified in the statute, still the mere fact that they violate the statute and employ a child under 14 does not of itself give her a right of action because of any injury she might have received in the course of that employment. The statute imposes a penalty upon those who shall violate it by hiring a child under 14 and putting him at work in such places, but you can see a child might work in such places and nothing happen to her, and in such case she would not have any right of action against the employer, even if the employer had violated the law in hiring her. So, for the mere violation of the statute in employing her she could not maintain this action for damages.   *   *   *

"But, gentlemen, I stated to you that it is necessary for the plaintiff, in a case of this kind, and for this girl, even if she was under 14, not only to show negligence on the part of the master and the negligence

complained of, which is that she was not instructed, shown, told, and warned of these dangers, but still necessary to trace the fault for the accident to the master and entirely to his fault, and the jury must be satisfied by the greater weight of the evidence that she herself was in the exercise of due care under all the circumstances.

"And what is due care for a child a little over 12 years old is not what is due care for a person of mature years and experience. What is due care for a child between 14 and 16 might not be due care on the part of a person of mature years and experience. So it is a relative term. By due care is meant such care as a child of her years, her knowledge, her experience, or her lack of knowledge and lack of experience, ought to exercise for her own protection.

"Now, when one employs another to work with, or in contact with, or in connection with, dangerous machinery or in a dangerous place, it is the duty of the one so employing to inform and instruct the person employed as to such dangers as are naturally and reasonably attendant upon that work, provided the person so hired is not already familiar with and cognizant of such dangers.

"Now, to make the defendants guilty of negligence in this case for which recovery could be had, so far as their negligence is concerned, you must be satisfied by a preponderance or greater weight of the evidence that they were not only negligent in employing this girl, but also in not giving her proper and adequate instructions and warning as to such dangers as one would be likely to encounter in doing that work.

"And also, for her to recover, it is necessary for you to determine that she was herself not careless so as to cause or help cause the injury she sustained.

"So we get back to this principal proposition: Were these defendants, or the person in charge of this work, who represented them, who was at the head of it, careless in employing her and in not giving her proper and adequate instructions and warnings? They say they did. You have heard the testimony. If they did, and she understood and appreciated such instructions and then violated them, of course they did their duty and they would not be responsible. Or, if she was careless herself, taking into consideration

her years and lack of experience, if there was lack of it, and such knowledge as had been communicated to her, then it is her fault, either in whole or in part, that she was injured, and in that case she cannot recover.

"The plaintiff has the burden of showing by the preponderance or greater weight of the evidence the truth of both of these propositions: That the defendants were guilty of negligence in employing and not sufficiently instructing the plaintiff and giving her proper warnings as to the dangers of her occupation; and, second, that in view of all the circumstances, her age, experience, or inexperience, unfamiliarity with machinery or this machine, inadequate understanding or realization of the attendant dangers, she was not herself guilty of a failure to observe that degree of care and caution for her own safety and protection as under the circumstances and in view of the situation, her age, knowledge, and experience, she ought to have observed. Understand, she must maintain both of those propositions; their negligence or want of care in the respect I have stated and her own observance of due care under the circumstances I have stated."

We will not quote more from the charge. It covers upwards of 20 pages of the printed record.

The first assignment of error relates to the refusal of the court to strike out certain testimony of Madelyn Bovyn. The testimony of this witness who testified through an interpreter, was very long; the cross-examination covering many printed pages. The court was of the opinion that, if there were inconsistencies in the testimony of the witness, they were for the jury. After carefully reading this testimony, we agree with the learned judge.

The next assignment of error relates to the refusal of the court to permit the introduction of the testimony of Mr. Allen and Mr. Reece as to an interview with Madelyn Bovyn, held after the accident happened. A reading of the record and of what was proposed satisfies us of the correctness of the ruling.

The next group of assignments of error relates to the refusal of the court to direct a verdict in favor of the defendants: (a) Because of variance between the declaration and the proofs; and (b) on the ground of contributory negligence.

As to these contentions, we say: (a) There was no such variance between the declaration and the proofs as would justify a directed verdict; (b) the jury were instructed at length as to the duty of the plaintiff, and as to what would in this case constitute contributory negligence. The defendants were employing a girl contrary to the express terms of the statute (section 10, Act No. 220, Pub. Acts 1911). If any one may justly complain of the charge of the court upon the subject of contributory negligence, it is not the defendants.

Did the court err in declining to submit the special question? The court correctly stated the rule of law. See *Neeley* v. *Stratton*[1] (151 N. W. 1045), and the many cases cited therein.

Many of the important questions in this case are fully covered by the opinion of Justice OSTRANDER in *Syneszewski* v. *Schmidt*, 153 Mich. 438 (116 N. W. 1107), and it is not necessary to repeat here what is said in that opinion.

The language of Justice HOOKER in *Braasch* v. *Stove Co.*, 153 Mich., at page 656 (118 N. W. 366, 20 L. R. A. [N. S.] 500), is also pertinent here.

The other assignments of error have been considered, but we think discussion of them is not necessary.

It is said the verdict is excessive. We cannot agree with this contention. See *Johnson* v. *City of Bay City*, 164 Mich. 251 (129 N. W. 29, Am. & Eng. Ann. Cas. 1912B, 866).

The case was a hotly contested one. There was much conflicting testimony. There were many diverse

---

[1] Decided April 6, 1915.

views of the law presented. The trial judge attempted to guard the rights of the respective parties. We think he succeeded.

Judgment is affirmed.

BROOKE, C. J., and McALVAY, KUHN, STONE, OS-TRANDER, BIRD, and STEERE, JJ., concurred.