REMEY v. DETROIT UNITED RAILWAY.

1. DAMAGES — PERSONAL INJURIES — POSTPONEMENT OF MARRIAGE — INSTRUCTIONS.

Where, in an action for personal injuries, plaintiff claims that her injuries caused the indefinite postponement of a contemplated marriage, an instruction that if her injuries would preclude her earning anything in the future, or working in any capacity—acting as a housewife—that was a matter for the jury to consider, as it was quite possible that the injuries were such as to preclude her from being married for some time, is not objectionable as permitting the jury to give compensation for the value of earnings lost by plaintiff as a housewife.

2. SAME — VARIANCE — OBJECTIONS NOT RAISED BELOW.

An objection that the declaration avers that plaintiff was so injured that she could never be married, while the evidence shows that her marriage was merely postponed, merely raises a question of variance, and, not having been raised below, will not be considered by this court with reference to the claim that plaintiff is not entitled to recover damages for the mere postponement of her marriage.

3. SAME — SUFFICIENCY OF EVIDENCE.

Where, in an action for personal injuries, there is evidence that before plaintiff's injury the day had been set, and preparations were then being made for her marriage, and that after the injury the marriage was indefinitely postponed because of her injuries, which were permanent, the proof is sufficiently definite to warrant a recovery for the postponement of the marriage.

4. SAME — INSTRUCTIONS — REQUESTS — MODIFICATION.

Defendant requested a charge that plaintiff could not recover for any aggravation of any disease or condition that existed prior to the day of the accident, inasmuch as the declaration did not count for any aggravation of any pre-existing condition, which the court gave; adding that he did not understand the testimony on plaintiff's part to be that she suffered from any of the injuries complained of prior to the accident, and that therefore there could be no question of aggravation to be presented to the jury.   *Held*, that the court's statement

was the mere repetition of a thought already expressed, and did not destroy the force of the request.

5. TRIAL — MISCONDUCT OF COUNSEL — ARGUMENTS — PREJUDICIAL ERROR.

Where, on the trial of an action for personal injuries, plaintiff, on cross-examination of defendant's expert, who had made an examination of plaintiff, showed that he carried away some pus discharged from plaintiff's womb, for the purpose of making a microscopical examination, but there was nothing in the testimony to indicate that such examination was not necessary, or that the witness was moved by a purpose or desire to discover that plaintiff was afflicted with gonorrhea or syphilis, a statement by plaintiff's counsel, in argument to the jury, that such microscopical examination was unnecessary, and had been made by the witness for the purpose or with the desire of discovering that plaintiff was afflicted with gonorrhea or syphilis, was prejudicial to defendant, and was not cured by mere remarks by the court that none of the physicians had reason to believe that there was any reason for them to look for such disorders, and that the remarks of counsel were unwarranted, though plaintiff's counsel thereupon stated that he would drop the matter, and requested the court to instruct the jury on the point, to which the court stated that all that was essential had been said on the subject.

Error to Wayne; Hosmer, J.   Submitted April 7, 1905. (Docket No. 38.)   Decided July 24, 1905.

Case by Nellie B. Remey, by next friend, against the Detroit United Railway for personal injuries.   There was judgment for plaintiff, and defendant brings error. Reversed.

*Corliss, Andrus, Leete & Joslyn (Paul Broadley Moody,* of counsel), for appellant.

*Lodge, Trevor & Brown,* for appellee.

CARPENTER, J.   While plaintiff was riding as a passenger on one of defendant's cars, a collision occurred between said car and another car preceding it on the same track.   It is the claim of plaintiff that as a result of this

collision she was first thrown violently forward against the back of the seat in front of her, and then back against the seat upon which she was sitting; that her womb was thereby displaced, her coccyx fractured, and her sciatic nerve injured; and that in consequence thereof a marriage then contracted was postponed indefinitely. She brought this suit, and recovered a judgment of $5,000 in the court below. Defendant asks us to reverse that judgment for various grounds, all of which go to the measure of damages.

1. The court charged the jury as follows:

" If her injuries were such as would preclude her earning anything in the future, or would preclude her working in any capacity—acting as a housewife—of course, that is a matter for you to take into consideration. * * * I do not mean to say * * * that if she were to be married it would be expected that she would earn by working in a store, as she has in the past; still she might be physically unable to do housework. * * * It is quite possible, gentlemen of the jury, that the injuries are such, and you may find them to be such—because the extent of the injuries is wholly for you, and not for me—as to preclude her from being married for perhaps some time."

Defendant contends that the court erred in giving the foregoing instruction, because there was no evidence whatever of the value of plaintiff's earnings. This objection proceeds upon the assumption that this instruction, properly construed, permitted the jury to give compensation for the value of earnings lost by plaintiff as a housewife. This is, in our judgment, a mistaken construction of the charge. The jury are not told to make allowance for earnings, but to consider plaintiff's incapacity to do work as a housewife, and this in connection with the statement that they may find plaintiff's injuries may preclude her from being married for some time. The effect of this instruction is to say to the jury that they may consider plaintiff's impaired capacity to act as a housewife, in determining whether her injuries are such as to postpone

her marriage. This is not error, if plaintiff had a right to damages for the postponement of her marriage.

2. We therefore consider defendant's claim that plaintiff had no right to damages for the postponement of her marriage. It is contended that she had not, for two reasons: (a) Because the declaration, properly construed, avers that the plaintiff is so injured that she can never be married, while the evidence tends to prove that her marriage is merely postponed. We answer this objection by saying that it merely raises a question of variance, which was not raised in the court below, and which, therefore, under the well-settled practice in this court, will not be considered. And (b) because the evidence that plaintiff's injuries postponed her marriage is too indefinite and uncertain to warrant a recovery for that element. There is evidence tending to prove that before plaintiff's injury the day was set, and preparations were then being made for her marriage, and that it was postponed because of her injuries; that these injuries are permanent. We think this evidence sufficiently definite and certain to warrant a recovery for this element.

3. The defendant requested the court to charge "that the plaintiff cannot recover for any aggravation of any disease or condition that existed prior to the day of the accident, inasmuch as the declaration does not count for any aggravation for any pre-existing condition." The court gave this charge, and added:

"I think that is so, gentlemen of the jury. I do not understand the testimony on the part of the plaintiff in this case is that she was not ["not" should probably be omitted] suffering from any of the injuries complained of prior to that time, and that the injuries which she now suffers are the direct result of the accident. Therefore there can be no question of aggravation to be presented to you."

Defendant contends that this comment of the court destroyed the whole force of its request. I do not so construe said comment. I think the effect of the judge's charge is

to tell the jury that there could be no recovery for any aggravation of a pre-existing disease, for two reasons: *First*, because it is not counted upon in the declaration; and, *second*, because it is not claimed by the plaintiff. The language of the court at the conclusion of the comment, " Therefore there can be no question of aggravation to be presented to you," does not, in my judgment, mean, as defendant's counsel contend, that there is no warrant in this case for saying that none of plaintiff's complaints do in fact result from an aggravation of some pre-existing disease. This language is a mere repetition of the thought already indicated, that the question of damages on that theory has not been presented.

4 One of defendant's witnesses (Dr. Spitzley) testified that he made an examination of the plaintiff a few days before the trial (this examination was made in the presence of plaintiff's counsel and of physicians chosen by plaintiff), and that that examination disclosed no evidence of plaintiff's injury. On cross-examination, plaintiff's counsel drew out the fact that, at the time of the examination, witness carried away with him some pus discharged from plaintiff's womb, for the purpose of making a microscopical examination, and that he made that examination.

" *Q.* And you wanted to find the presence or absence of what?

"*A.* The presence of everything that is there, and the absence of anything that was not there. I was not looking for anything special.   *   *   *

" *Q.* Did you find any infection—any evidence of infection—there?

"*A.* I found pus. Pus means infection.   *   *   *

" *Q.* You wanted to know whether there was a specific infection there, and that was the purpose of that microscopical examination?

"*A.* I wanted to find out what was there.

" *Q.* That is why you made the examination?

"*A.* I just said I made the examination to find out what was there.

" *Q.* Answer 'yes' or 'no.' Didn't you make that ex-

amination to find out whether there was any specific infection there?

"*A.* No; I did not.   *   *   *

"*Q.* You looked for it while you were making that microscopical examination?

"*A.* Why, certainly, I looked for everything.

"*Q.* What do you mean by 'specific infection?'

"*A.* What I mean by 'specific infection,' if I am talking about a case of diphtheria, I mean diphtheria.

"*Q.* Will you find diphtheria in the uterus?

"*A.* Yes; sometimes.   *   *   *

"*Q.* I am asking you by specific infection in the uterus?

"*A.* Any kind that might occur there.

"*Q.* What are they?

"*A.* Many might; the different kinds of pus germs— *   *   *

"*Q.* Go on.   What kind of specific infection would you find in the uterus, or what would you look for?

"*A.* The different kinds of pus infection.

"*Q.* What are they?

"*A.* They include the streptococcus, two or three kinds of staphylococcus, gonococcus.

"*Q.* What is the gonococcus?

"*A.* Gonococcus is the specific germ that causes a disease of the mucous membrane known as 'gonorrhea.'

"*Q.* You find really diphtheria infection, you find coccus infections, and if you find any sore there it may be syphilitic?

"*A.* Syphilitic.   *   *   *   Yes, sir.

"*Q.* Specific infection?

"*A.* Yes, sir.

"*Q.* You took that pus away upon that cotton, and you made a microscopical examination to find out if there were any of these specific infections there?

"*A.* Specific infections; yes, sir."

In his closing argument to the jury, plaintiff's counsel said:

"Let us consider the temper and frame of mind of the experts that have testified against the plaintiff in this case. Did you notice yesterday afternoon when it took me ten or fifteen minutes to drive Dr. Spitzley into an admission of why he had put that pus from the womb upon the cotton and took it away? Shrewd Spitzley! Shrewd, al-

though under oath! He knew what I was driving at all the time. You did not, perhaps; but he knew, and it took me ten or fifteen minutes to get the admission, but I got it. Now, what did the pus indicate, by the way, that he found there? Is it normal? No; no; he says that it indicated that something was the matter with that womb; and yet he testifies to you that he found that pus and took it away with him upon a piece of cotton. And the attitude of this expert is revealed by the admission which he finally made as to the purpose of asking whether a microscopical examination had been made of that pus, and his taking away pus upon a piece of cotton for the purpose of microscopical examination, and making a microscopical examination. He wanted to see whether that girl had gonorrhea—gonorrhea or syphilis."

Defendant's counsel excepted. Plaintiff's counsel continued:

"That is the testimony, if the court please, and you will remember it. He wanted to see whether that girl had gonorrhea or syphilis, whether it was present or absent. And that is the attitude, gentlemen of the jury, in which these bright, honest, fair experts have approached their testimony upon this case. Why, gentlemen of the jury, it does not need an expert to know that you could tell— that a physician ought to tell without a microscopical examination—whether anything of that kind was the matter. * * * I had a right to ask that question. I had a right to show to you the kind of so-called fair experts that were testifying for the defendant in this case, and, although it took me ten minutes—

"*The Court* (addressing plaintiff's counsel): Why is it unfair * * * for the physician for the railway company to eliminate everything that he can in reaching the disorder?

"*Plaintiff's Counsel:* Because, gentlemen of the jury —I am appealing to the common knowledge of the jurymen now—that they could tell without making a microscopical examination, and that there are other evidences, but he was so anxious to find out; and I think I have a right to argue that to the jury, that he even made—

"*The Court:* There is no reference on the part of anybody here, by anybody, as to that—that she was suffering from any of those disorders. None of the physicians had reason to believe that there was any reason to look for

this disorder, any more than anything else.   *   *   *   It does not seem to me that the remarks of counsel in that regard are warranted.

"*Plaintiff's Counsel:* I will drop it, then, rather than have any error.   (Defendant's counsel excepts to the argument.)

"*Plaintiff's Counsel:* In view of your honor's ruling, if you will kindly instruct the jury on that point ?

"*The Court:* I have, I think, said all I think is essential to be said on that subject."

The foregoing statement of plaintiff's counsel is, in effect, this:   That defendant's physician made an altogether unnecessary microscopical examination—for his asking the jury to say that it was unnecessary was equivalent to his affirming that it was unnecessary—and that he made this examination for the purpose or desire of discovering that plaintiff was afflicted with gonorrhea or syphilis. This statement was clearly unwarranted.   There was nothing to indicate, and therefore nothing to justify the jury in saying, that the microscopical examination was not necessary.   There was nothing to indicate that in making that examination the witness was moved by a purpose or desire to discover that plaintiff was afflicted with gonorrhea or syphilis.   The most that can be said is that he made that examination to discover whatever might be discovered, and that such examination might disclose the presence of several specific germs, one of which was the germ of gonorrhea.   Neither can we assume that this improper argument was not prejudicial to defendant.   The argument to the jury—an argument which could not be answered—that a witness of defendant, occupying a confidential relation toward plaintiff, had planned this flagrant violation of her rights, was one calculated to inflame the passions of the jury, and we are not convinced that it did not have that effect.   Neither is this a case in which counsel's conduct may be excused on the ground that his language was unpremeditated or brought about by improper remarks of opposing counsel.   On the contrary, it is evident that he designedly brought out the testimony

which served as a text for, but which did not justify, his improper and unwarranted remarks. Nor do I think that the statement of the trial judge that the remarks were unwarranted altogether destroyed their effect. Plaintiff's counsel call our attention to many cases in which this court has held that improper remarks did not justify a reversal of a judgment. It is sufficient to say that in those cases we thought that the improper remarks did not affect the verdict. In this case we think it did. It should also be said that plaintiff's counsel went too far in referring to the influence which defendant had over witness Hudson. We do not, however, decide that this impropriety constitutes reversible error.

For the error pointed out, the judgment should be reversed, with costs, and a new trial ordered.

McAlvay, Grant, Montgomery, and Hooker, JJ., concurred.