SADLOWSKI v. MEERON.

1. NEGLIGENCE — WHETHER TRUCK DRIVER NEGLIGENT QUESTION FOR JURY.

Whether the driver of a motor truck, who sent an 11-year old boy into a street to signal traffic so that the truck could be backed into it, and then continued backing his truck without regard to where the boy was, until he was caught between the truck and a passing wagon, and injured, was guilty of negligence, *held*, a question for the jury.

2. SAME — WHETHER DRIVER OF TEAM NEGLIGENT QUESTION FOR JURY.

Whether the driver of a team of horses hauling a wagon, who could see that a boy who was signaling him to stop to allow a truck to back into the street was in danger of being caught between the truck and the wagon, was guilty of negligence in continuing until the boy was struck by the wagon and injured, *held*, a question for the jury.

3. SAME — DRIVER OF TEAM OWES DUTY TO BOY IN STREET IN APPARENT DANGER.

While the driver of a team of horses was not obliged to obey a signal to stop given by an 11-year old boy standing in the street, he was in duty bound to so drive his team as not to place the boy in a position of danger which was apparent to him.

4. SAME — CONTRIBUTORY NEGLIGENCE.

An 11-year old boy, sent by the driver of a truck into a street to signal traffic so that the truck could be backed into it, was not guilty of contributory negligence as matter of law in failing to seek a safe place after he was in danger of being caught between the truck and a passing wagon, the driver of which failed to heed his signal to stop, and which struck and injured him.

5. SAME — TEST OF BOY'S NEGLIGENCE IS NOT WHAT AN ADULT WOULD DO UNDER SIMILAR CIRCUMSTANCES.

Whether an 11-year old boy was guilty of contributory

[1]Municipal Corporations, 28 Cyc. p. 913; [2]Id., 28 Cyc. p. 913; [3]Id., 28 Cyc. p. 913; [4]Negligence, 29 Cyc. p. 642; [5]Id., 29 Cyc. p. 535; L. R. A. 1917F, 84; 14 A. L. R. 1192; 20 R. C. L. 127; 3 R. C. L. Supp. 1035; 4 R. C. L. Supp. 1337.

negligence in remaining in a place of danger in the street, where he had been sent by the driver of a truck to direct traffic, is to be tested by determining whether he did what an ordinary boy of his age would have done under similar circumstances, and not by what an adult would have done.

6. DAMAGES—LOSS OF EARNINGS FROM PERMANENT MENTAL IMPAIRMENT OF 11-YEAR OLD BOY MAY BE INFERRED AND RECOVERY HAD.

If negligent injuries to an 11-year old boy caused a permanent mental impairment, a loss might be fairly inferred therefrom and recovery had for any loss of earnings caused thereby after he reached the age of 21 years. ·

7. SAME—UNCERTAINTY OF AMOUNT WOULD NOT BAR RECOVERY.

That the amount of damages caused to an 11-year old boy by mental impairment could not be estimated with certainty would not deprive him of the right to recover damages at all, but he is entitled to place the facts before the jury and to take their judgment thereon, and the absence of proof thereon would not bar recovery.

8. TRIAL—INSTRUCTIONS—FURTHER INSTRUCTIONS JUSTIFIED WHERE JURY MISUNDERSTOOD AND RENDERED INCONSISTENT VERDICT.

Where, in order to justify a verdict against the master, it was necessary to also find against the servant who committed the negligent act, and the jury were so instructed, but apparently misunderstood the instruction and returned an inconsistent verdict against the master only, further instruction, resulting in a verdict against the servant also, was justified, and a new trial should not be granted for this reason.

9. DAMAGES—EXCESSIVE VERDICT.

A verdict for $8,000, which was reduced to $5,000 by the trial court, for injuries to an 11-year old boy, resulting in a broken jaw, which became infected, the loss of several teeth, and arrested mental development, is not so excessive as to require reversal of the judgment therefor.

FELLOWS, WIEST, and CLARK, JJ., dissenting.

Error to Wayne; Brennan (Vincent M.), J.     Submitted April 29, 1927.     (Docket No. 132.)     Decided October 3, 1927.     Rehearing pending.

---

⁶Damages, 17 C. J. § 164; Infants, 31 C. J. § 252; ⁷Damages, 17 C. J. § 90; ⁸Trial, 38 Cyc. p. 1894; ⁹Damages, 17 C. J. § 408; L. R. A. 1915F, 30; 2 R. C. L. Supp. 638; 5 R. C. L. Supp. 480; 6 R. C. L. Supp. 521.

Case by Walter Sadlowski, an infant, by his next friend, against Jacob Meeron, Ferdinand Porath and others for personal injuries.    Judgment for plaintiff. Defendants bring error.    Affirmed.

*Oxtoby, Robison & Hull,* for appellants Meeron *et al.*

*Ernest P. La Joie,* for appellants Porath.

*Walter M. Nelson,* for appellee.

SHARPE, C. J.    The facts as here stated are based on the testimony most favorable to plaintiff's right of recovery.    The plaintiff at the time of the injury was 11 years of age.    He was in the fourth grade at school.    Fowler, the driver of the truck, asked plaintiff and his brother John, then 14 years old, to help him in delivering soft drinks from the truck he was driving, which belonged to the defendant bottling works.    After making some deliveries, they went west on Michigan avenue to Lawndale avenue.    Here the truck crossed Michigan and stopped just south of the crosswalk near the west curb on Lawndale to make a delivery.    The plaintiff had ridden in the cab with Fowler, and John on the body of the truck.    Both John and the plaintiff testify that, after delivery had been made, Fowler told plaintiff to go back of the truck and signal the traffic on Michigan avenue so that he might back the truck thereon.    The plaintiff did so. A team and wagon belonging to the defendant Porath were approaching on a walk from the west, and about 15 or 20 feet from where plaintiff stood.    He put up his hand as a signal for the driver to stop, and at the same time signaled for the truck to back up.    The driver of the wagon did not stop.    Both it and the truck approached the spot where plaintiff stood.    Relying on the effect of his signal, and believing that the wagon would stop, he did not move until both the

wagon and the truck were almost upon him.   Had
either of the vehicles stopped, he could easily have
stepped out of the way of the other.   Realizing his
danger when both were within a few feet of him,
he made a jump to reach the south curb of Michigan.
The cause of his injury was well stated by the trial
court:

"The neckyoke or tongue of the wagon, approaching
in such a manner as the tongue of a wagon driven over
brick paving would approach, struck him on the chest
or chin and threw him to the paving in the rear end
of the truck."

The driver of the truck, while denying that the
boys had ridden with him that day, or that he had
asked the plaintiff to signal the traffic while he backed
up, admitted that they had at times assisted him in
making deliveries by watching the truck so that no
bottles would be stolen therefrom, and that he had
occasionally paid the older brother therefor.   The
boys both testify that they were helping him that day,
and that he gave the order to plaintiff as stated above.
His truck had a mirror in the front, but was so loaded
at the back that he could not see a full-grown person
standing within 10 feet of the back of the truck.   He
therefore found it convenient to use the plaintiff to
assist him in safely backing up.   When he imposed
the duty to signal upon this 11-year old boy, he cer-
tainly owed a duty to him to see that he was not placed
in a perilous position while doing so.   The signals
given by the boy could have been as plainly seen, and
would have been quite as effective, had he stood in line
with the side of the truck, and not directly behind it.
Whether Fowler's act, in view of his employment of
this young boy for such a service, in backing up his
truck, without regard to where the boy was or what
he was doing, was negligent, was, I think, for the
jury.

Under this proof, I think it was for the jury to say whether the act of the driver of the team, in failing to stop before he came into such close proximity to the truck and the boy, was negligence on his part. The dangerous position in which the boy was standing, if he continued on his way, was plainly visible. If the testimony of the two boys be accepted as true, it cannot but be inferred that he knew that he was under no obligation to heed the signals given by the boy and felt resentment because they were given. While he need not have obeyed such signals, he was in duty bound to so drive his team as would not place the boy in a position of danger which was apparent to him.

In my opinion it cannot be said as a matter of law that the plaintiff was guilty of contributory negligence. The task he was asked to perform was one which would appeal to his boyish nature. It invested him with a power and authority he had never before possessed. He had observed traffic officers, and now found himself armed with like authority. It doubtless never occurred to him that the driver of the truck, with whom he had ridden, had no authority to make him a traffic officer. When he gave the stop signal to the driver of the wagon, he was doubtless appalled that it was not instantly obeyed. We cannot judge his conduct in remaining where he was in the street, with the wagon and truck both approaching him, by what an adult should have then done. He remained where, as he doubtless viewed it, he had been stationed by the order of the truck driver, too long. He should have sought safety earlier. But he was a boy but 11 years old, and I am not prepared to say that he did not do what the ordinary boy of that age would have done under the same circumstances. As was said in *Weitzel* v. *Railway*, 186 Mich. 7, 12:

"It may be said that he chose the wrong course, but we are of the opinion that it cannot be said as a matter

of law that an error of judgment under such circumstances is negligence."

In 20 R. C. L. pp. 126, 127, it is said:

"The exact cautionary measures that must be taken by children cannot be expressed, of course, by any general rule; they must, in connection with the circumstances in each case, depend upon the intelligence, capacity, and judgment, which he is shown by the evidence to have possessed. Whether in any particular case the injured child might have seen and avoided the danger—that is, whether he was guilty of contributory negligence—is peculiarly within the province of the jury to determine."

Error is assigned upon the following excerpt from the charge:

"You may or may not find that he was mentally affected by the accident. He may recover for this loss in the past and in the present; and if you find that his mental faculties will be impaired permanently and that it will reduce his earning ability, you may allow such an amount as you find by the present worth of his earnings he will lose by reason of such impairment after he reaches the age of twenty-one years."

Dr. Tibbals testified:

"On the history that I had and on my examination and from my knowledge and experience, I have an opinion this accident, this hurt, had affected his mind; that as a result of the accident the mental development of this boy had been interfered with.

"*Q.* Did you form an opinion as to whether that interference or retardment or stopping of it, whichever—did you make up your mind which it is? Retardment or stopping? Is it a mere slowing down or is it a complete stopping?

"*A.* Well, it is—up to date it is stopping, because he is just where he was at the time the accident occurred in school, and in his general mental development. I think it is permanent."

There was other testimony to the same effect. Counsel in their brief say:

"There was not a particle of evidence that the plaintiff did suffer any pecuniary loss by reason of any mental impairment. There was not even an opinion of an expert witness to this effect. There is no presumption that the mental impairment testified to, even if it were caused by the accident, did occasion any pecuniary loss. If there were any such damages, it was susceptible of proof in exactly the same manner that damages resulting from physical injury is susceptible of proof. The jury cannot speculate as to any damages in the absence of such proof."

This claim, while applicable to an adult plaintiff, has, in my opinion, no application to the probable loss of earnings of a boy less than 16 years of age at the time of the trial. He had not arrived at an age where he had become an earner of wages. No comparison could be made of his probable earnings after he should reach the age of 21 with those of a young man whose mental faculties had not been impaired. The plaintiff was entitled to recover, if at all, for any loss of earnings after he reached the age of 21 years which he might sustain due to his injury. If the injury had caused a permanent mental impairment, a loss might be fairly inferred therefrom and recovery had therefor. *Braasch* v. *Michigan Stove Co.*, 153 Mich. 652, 657 (20 L. R. A. [N. S.] 500). The amount of such damages could not be estimated with certainty, "but this does not, as we have repeatedly held, deprive the injured person of all damages." *Love* v. *Railroad Co.*, 170 Mich. 1, 7. The plaintiff was not to blame for being unable to establish by proof the amount of such loss. He was entitled, however, to place the facts before the jury and to take their judgment thereon. *Hart* v. *Village of New Haven*, 130 Mich. 181. The jury had all been boys, and were then men. The average juror knows the ability of a man mentally sound to earn wages, and would be just as competent to estimate the loss of earnings due to mental impairment as would any witness who

might be called upon to express an opinion thereon. *Black* v. *Railroad Co.,* 146 Mich. 568.    The absence of such proof was no bar to the allowance of such sum as the jury might find to be fair and reasonable.

The jury, after some deliberation, returned a verdict in favor of the plaintiff and against the defendants bottling works and Porath.    The court had instructed them that to find against the bottling works they must find the defendant Fowler personally to have been guilty of negligence.    They were again very emphatically instructed as to their duty in this respect, and retired and again returned with a verdict against all three defendants.    It is urged that the first verdict was a finding that Fowler was not negligent, and, if not, a verdict against the bottling works was not justified.    The verdict first rendered was inconsistent. While the charge was explicit as to the liability of the three defendants, it apparently was not understood by the jury.    I think the further instruction was justified, and that a new trial should not be granted for this reason.

On a motion for a new trial the court required the plaintiff to remit $3,000 of the $8,000 verdict as a condition of the denial thereof.    This was done.    I cannot say that $5,000 is so excessive an allowance for the injuries plaintiff received as to justify us in reversing the judgment for that reason.

The judgment is affirmed.

BIRD, SNOW, STEERE, and MCDONALD, JJ., concurred with SHARPE, C. J.

WIEST, J. (*dissenting*).    This is a personal injury case.    Plaintiff had verdict for $8,000.    This was reduced by court order and remittitur to $5,000.    Defendants review by writ of error.

We think plaintiff was guilty of contributory negligence, and the motions of defendants, for directed verdict on that ground, should have been granted.

. October 10, 1922, shortly after noon, plaintiff, then 11 years of age, was requested by defendant Fowler, driver of an automobile truck owned by defendants Meeron, Sedman, and Singer, doing business as the Wolverine Bottling Works, to signal traffic on Michigan avenue, city of Detroit, to enable the driver to back the truck from a side street onto Michigan avenue and thereby be in position to go east on that avenue. Plaintiff stepped from the sidewalk into the street back of the truck, and, seeing a wagon drawn by a team approaching 15 or 20 feet away, belonging to defendant Ferdinand Porath, held ·up· one of his hands as a signal to the driver of the team to stop and with his other hand motioned the truck driver to keep on backing. The driver of the team did not obey the signal and the driver of the truck, not being able to see the boy, continued backing the truck. The boy faced the team with his back toward the truck. The team was walking and the truck was backing slowly, and the boy soon found himself between two approaching vehicles and recognized the danger of remaining there, but claims he did so because the truck driver had told him to stay in the street and he thought the team would stop. When the heads of the horses came within three or four feet of him, plaintiff endeavored to get out of the way, was struck in the jaw by the end of the wagon tongue and fell beneath the truck. The team stopped short of the truck and the truck did not strike or injure plaintiff. The wagon tongue broke plaintiff's jaw and knocked out some of his teeth, and, it is claimed, occasioned an infection resulting in arresting his mental development.

For the purposes of decision we assume that both drivers were guilty of negligence. When plaintiff became aware of his peril he was yet in a position to avoid injury and should have removed himself from the point of danger. His only excuse for not doing

so was the claimed direction by the truck driver, given at a time when no danger was apparent, and he thought the team would stop.   Plaintiff was old enough to be held to the duty of acting on his own promptings of what he should have done to avoid the danger, and it avails him nothing to say he remained when he knew he ought not to have done so because the truck driver had stationed him to signal traffic.   An instruction, given when there is no present danger, cannot free one from contributory negligence when danger becomes obvious, is recognized, way to safety is open, need to take safety action is prompted and not taken.   Surely, defendant Porath's claim of plaintiff's contributory negligence is not at all met by an instruction given plaintiff by the truck driver.   An instruction to go into the street and signal traffic was not equivalent to a direction to remain there in the face of apparent danger and not pass to safety when aware of need to do so.   Even if the driver of the truck had directed plaintiff to remain in the street and face apparent danger it would not absolve plaintiff from contributory negligence if such was his reason for remaining after danger was recognized.

Other serious questions are presented, but, considering our view of the case, need not be considered.

We find no motion by defendants for judgment in their favor notwithstanding the verdict.

Plaintiff made no case and the judgment should be reversed without a new trial, with costs to defendants.

FELLOWS and CLARK, JJ., concurred with WIEST, J.