**Rex PIERCE, Jr., a Minor by his Next Friend, Janet Pierce, Plaintiff-Appellee,**

v.

**NEW YORK CENTRAL RAILROAD COMPANY, Defendant-Appellant.**

No. 18272.

United States Court of Appeals
Sixth Circuit.
April 21, 1969.

---

Gordon B. Wheeler, Grand Rapids, Mich., for appellant; Wheeler, Upham, Bryant & Uhl, Grand Rapids, Mich., and Patrick E. Hackett, T. Patrick Durkin, Detroit, Mich., on brief.

Laurence D. Fowler, Lansing, Mich., for appellee; Stiles & Fowler, Lansing, Mich., on brief.

Before O'SULLIVAN, PHILLIPS and CELEBREZZE, Circuit Judges.

PHILLIPS, Circuit Judge.

Judgment was rendered against the railroad for $132,500 in this tort action involving severe injuries to a boy slightly over eight years of age. The case was tried before District Judge Noel P. Fox sitting without a jury.

The action originally was filed in the Circuit Court of Ingham County, Michigan, and was removed to the District Court upon petition of the railroad upon the basis of diversity of citizenship. Michigan law controls.

We affirm certain basic findings of the District Court but vacate the judgment and remand the case for clarification and further findings on the issue of damages.

The accident occurred on the railroad right of way on a snowy day, February 6, 1962. The plaintiff and a seven year old friend were sledding on a street one block from the appellant's railroad tracks in Lansing, Michigan. Plaintiff heard the train, told his friend to come on, and ran to a street which ended at a point overlooking the railroad tracks. The District Court found that when the plaintiff reached a red house on the corner, he cut diagonally across that property and ran to the hill overlooking the tracks, slipped on snow and ice at the top of the hill beside the tracks, slid down the hill, then stood up and stumbled and fell under the passing train which injured his foot. The foot subsequently had to be amputated above the ankle.

■ The railroad contends that the District Court's findings as to how the accident occurred were clearly erroneous. In this case there was much conflict in the testimony and two of the witnesses were children. The District Judge had an opportunity to observe the demeanor of the witnesses while they were testifying. We cannot say on this record that his findings as to how the accident occurred are clearly erroneous. Rule 52(a), Fed.R.Civ.P.

Liability

The District Court held that the railroad was guilty of negligence in failing to fence its track as required by a Michigan statute and was guilty of common law negligence in failing to fence the track. The railroad contends that it was under no duty to fence its track at the point where the accident occurred.

■ Under the statutory law of Michigan railroads are required to erect and maintain a four and one-half foot high fence on both sides of their

tracks.[1] A railroad is not required, however, to erect and maintain such fences within the limits of the railroad yard. Hoover v. Detroit, G. H. & M. Ry. Co., 188 Mich. 313, 154 N.W. 94; Katzinski v. Grand Trunk Ry. Co., 141 Mich. 75, 104 N.W. 409; Rabidon v. Chicago & W. M. R. Co., 115 Mich. 390, 73 N.W. 386, 39 L.R.A. 405; Cygan v. Chesapeake & Ohio Ry. Co., 291 F.2d 782 (6th Cir.). The yard limits within which fences are not required are the area within which yard engines are permitted to work without receiving orders, where such fencing would constitute a hazard to the trainmen. Rabidon v. Chicago & W. M. R. Co., *supra.* Whether an area is within yard limits so defined is a question for the trier of the facts, Cygan v. Chesapeake & Ohio Railway Co., *supra*, unless it is established as a matter of law that the area is within the yard limits, Rabidon v. Chicago & W. M. R. Co., *supra.* The burden of proof is on the defendant to establish the exceptional case, such as the existence of yard limits, which relieves it of the statutory duty to fence. Wilder v. Chicago & W. M. R. Co., 70 Mich. 382, 38 N.W. 289; Flint & Pere Marquette Ry. Co. v. Lull, 28 Mich. 510, 515.

■ In this case, according to the testimony of the railroad's sole witness on this issue, the area where the accident occurred is not within the railroad yard but is within the yard limits as defined by the railroad. The place where the accident occurred is a mainline track, although switch engines use it in going from one yard to another and in going to various sidings to drop off cars. There is nothing in the record to indicate whether trains operating over the line are permitted to work on it without orders or timetables, other than defense witness Harold Winn's statement that "our switch engines are controlled in the yard limits between the yard boards." The railroad witness testified that he did not know whether the statutory fence would block the view of the railroad employees and that it would not interfere with their movements. In view of the fact that the railroad bore the burden of establishing that the area in question came within the exception to the statutory requirement and that the question was one for the trier of facts, we cannot say on this record that the finding of the District Court was clearly erroneous. This finding therefore must stand. Rule 52(a), Fed.R.Civ.P.

■■ Where the statutory fence is required, a recovery for negligence may be had if injury is proximately caused by the failure to provide the required fence. Keyser v. Chicago & Grand Trunk Ry. Co., 56 Mich. 559, 23 N.W. 311, and 66 Mich. 390, 33 N.W. 867. The District Court found that a negligent failure to provide the fence was the proximate cause of the injury. Since we agree with the conclusion that the defendant was under the statutory duty to fence the track in question and hold that the findings of fact of the District Court as to how the accident occurred are not clearly erroneous, we agree with the conclusion of the District Court that the railroad was guilty of negligence which was the proximate cause of the injury suffered by the plaintiff. We do not reach the question of whether the railroad was under a common law duty to fence the tracks in the area where the injury occurred.

### Damages

The District Court granted judgment for the plaintiff in the amount of $132,-500 by finding an $87,500 loss of future earnings, $25,000 for pain and suffer-

---

1. Michigan Statutes Annotated § 22.274 (1937) [Comp.Laws Mich.1948, § 466.15] (in relevant part):

   "§ 22.274 Fences, cattleguards and crossings; erection of farm and private crossings; injury to animals; destruction; penalties and civil liability.] SEC. 15.

   Every railroad company formed under this act or any former act, and every corporation owning or operating any such railroad, shall erect and maintain in effective condition of repair, fences on each side of the right of way to their respective roads, as hereinafter provided."

ing, and $20,000 for loss of participation in sports and other enjoyments of life. The railroad contends that the finding of $87,500 loss of earnings is not supported by the evidence and is based on conjecture and surmise. The railroad further contends, without citation of authority, that the "suffering" in "pain and suffering" encompasses "loss of life's enjoyments" and that the $20,000 award, therefore, is legally an unacceptable duplication of a part of the award for pain and suffering. Finally the appellant argues that the District Court did not reduce the future damages to present value.

■ It should be said at the outset that we do not consider the award in this case to be excessive.

There was testimony that plaintiff had an extremely bad psychological reaction to the loss of his foot. His ability to participate in athletic activities and games with his classmates was destroyed in some instances and with respect to all sports was curtailed seriously. Before the accident he was a healthy active boy, as evidenced by his ability to go sledding on the date of his accident; his grades were average and his school attendance was good. His mother testified that before the accident he liked to go to school and would insist upon attending school even on days when he was sick. After the injury he had no interest in school. He frequently was absent and his grades dropped to failing or near failing. Between the accident and trial his performance as a student had deteriorated to a tragic degree.

In Sadlowski v. Meeron, 240 Mich. 306, 215 N.W. 422, rehearing denied, 243 Mich. 602, 220 N.W. 680, the plaintiff was an eleven year old boy who, as a result of being struck by a wagon tongue, suffered among other injuries permanent mental impairment. Without any evidence as to his probable earnings after twenty-one years of age or the earning of persons without such injury, the case was submitted to the jury with instructions on damages for impairment of earning ability. On appeal the defendant alleged as error that there was no evidence of pecuniary loss by impairment of future earnings and that absent such evidence the jury could only speculate as to damages. The Michigan Supreme Court affirmed, saying of the defendant's complaint:

"This claim, while applicable to an adult plaintiff, has, * * * no application to the probable loss of earnings of a boy less than 16 years of age at the time of the trial. He had not arrived at an age where he had become an earner of wages. No comparison could be made of his probable earnings after he should reach the age of 21 with those of a young man whose mental faculties had not been impaired. The plaintiff was entitled to recover, if at all, for any loss of earnings after he reached the age of 21 years which he might sustain due to his injury. If the injury had caused a permanent mental impairment a loss might be fairly inferred therefrom and recovery had therefor. Braasch v. Michigan Stove Co., 153 Mich. 652, 657, 118 N.W. 366, 20 L.R.A.,N.S., 500. The amount of such damages could not be estimated with certainty, 'but this does not, as we have repeatedly held, deprive the injured person of all damages.' Love v. Detroit, J. & C. Railroad Co., 170 Mich. 1, 7, 135 N.W. 963. The plaintiff was not to blame for being unable to establish by proof the amount of such loss. He was entitled, however, to place the facts before the jury and to take their judgment thereon. Hart v. Village of New Haven, 130 Mich. 181, 89 N.W. 677. The jury had all been boys, and were then men. The average juror knows the ability of a man mentally sound to earn wages, and would be just as competent to estimate the loss of earnings due to mental impairment as would any witness who might be called upon to express an opinion thereon. Black v. Michigan Central Railroad Co., 146 Mich. 568, 109 N.W. 1052. The ab-

sence of such proof was no bar to the allowance of such sum as the jury might find to be fair and reasonable." *Id.* 240 Mich. at 312–313, 215 N.W. at 424.

In the present case the plaintiff has been permanently injured and was younger than Sadlowski both at the time of injury and at trial, making any showing of likely future earnings even more difficult. The expert testimony which the plaintiff offered to adduce was excluded on the objection of the defendant. The District Court had an opportunity to see the plaintiff and hear testimony as to his family situation and educational prospects. We cannot say that the District Judge was less competent than the "average juror" to estimate the loss of earnings due to the permanent injury suffered by this plaintiff. Bound as we are by state law on the question of the sufficiency of the evidence in a diversity action, DeGarmo v. City of Alcoa, 332 F.2d 403, 404 (6th Cir.), we see no substantial distinction between the instant case and Sadlowski v. Meeron, *supra,* 240 Mich. 306, 215 N.W. 422, rehearing 243 Mich. 602, 220 N.W. 680, on the issue of sufficiency of the evidence. Therefore, we hold there was sufficient evidence of impairment of earning ability. *See* Pratt v. Detroit Taxicab & Transfer Co., 225 Mich. 147, 195 N.W. 691; Black v. Michigan Central R.R. Co., 146 Mich. 568, 109 N.W. 1052. *See also* Godwin v. Ace Iron & Metal Co., 376 Mich. 360, 368–369, 135 N.W.2d 151.

In estimating the loss of future earnings of a permanently injured plaintiff the formula employed must be reasonably suited to arrive at a sustainable figure. Without expressing our agreement with the particular method used by the District Judge in the present case we are satisfied that the total award for loss of future earnings was well within the range of the proof. However, after coming to an estimate of the yearly loss of future earnings that would be experienced by this plaintiff, the District

Judge apparently failed as required by Michigan law to reduce these amounts to their present worth. This latter question is discussed later in this opinion.

No Michigan case was cited to us by counsel and we have been unable to find any which clearly answers the question whether loss of life's enjoyments is a proper element of damages for an award distinct from pain and suffering. The law in other jurisdictions is split. See "Loss of Enjoyment of Life," 15 A.L.R. 3d 506, and cases annotated there.

The broad principle of full compensation even in the face of difficulties of proof has long been accepted in Michigan in tort cases as stated in Allison v. Chandler, 11 Mich. 542.

"Since, from the nature of the case, the damages cannot be estimated with certainty, and there is a risk of giving by one course of trial less, and by the other more than a fair compensation —to say nothing of justice—does not sound policy require that the risk should be thrown upon the wrong doer instead of the injured party? However this question may be answered, we can not resist the conclusion that it is better to run a slight risk of giving somewhat more than actual compensation, than to adopt a rule which, under the circumstances of the case, will, in all reasonable probability, preclude the injured party from the recovery of a large proportion of the damages he has actually sustained from the injury, though the amount thus excluded can not be estimated with accuracy by a fixed and certain rule. Certainty is doubtless very desirable in estimating damages in all cases: and where, from the nature and circumstances of the case, a rule can be discovered by which adequate compensation can be accurately measured, the rule should be applied in actions of tort, as well as in those upon contract. Such is quite generally the case in trespass and trover for the taking or conversion of personal property; if the property (as it generally

is) be such as can be readily obtained in the market and has a market value. But shall the injured party in an action of tort, which may happen to furnish no element of certainty, be allowed to recover no damages (or merely nominal), because he can not show the exact amount with certainty, though he is ready to show, to the satisfaction of the jury, that he has suffered large damages by the injury? Certainty, it is true, would thus be attained; but it would be the certainty of injustice. And, though a rule of certainty may be found which will measure *a portion* and *only a portion* of the damages, and exclude a very material portion, which it can be rendered morally certain the injured party has sustained, though its exact amount can not be measured by a fixed rule; here to apply any such rule to the whole case, is to misapply it: and so far as it excludes all damages which can not be measured by it, it perpetrates positive injustice under the pretence of administering justice.

"The law does not require impossibilities; and can not therefore require a higher degree of certainty than the nature of the case admits. And we can see no good reason for requiring any higher degree of certainty in respect to the amount of damages, than in respect to any other branch of the cause. Juries are allowed to act upon probable and inferential, as well as direct and positive proof. And when, from the nature of the case, the amount of the damages can not be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit. This should, of course, be done with such instructions and advice from the Court as the circumstances of the case may require, and as may

tend to prevent the allowance of such as may be merely possible, or too remote or fanciful in their character to be safely considered as the result of the injury.

"In the adoption of this course it will seldom happen that the Court, hearing the evidence, will not thereby possess the means of forming a satisfactory judgment whether the damages are unreasonable, or exorbitant; and, if satisfied they are so, the Court have always the power to set aside the verdict and grant a new trial." *Id.* at 554–556.

■ In Remey v. Detroit United Railway, 141 Mich. 116, 104 N.W. 420, the Michigan Supreme Court approved postponement of marriage as a compensable element of damages, specifically rejecting the theory that this was for loss of earnings. In Cawood v. Earl Paige & Co., 239 Mich. 485, 214 N.W. 402, in upholding a verdict against the defendant's claim of excessiveness, the Court said that the plaintiff "will no longer be permitted to enjoy many of the things in life which it may well be said 'make life worth living.'" *Id.* at 490, 214 N.W. at 404. In Tabor v. Carey & Leach Bus Lines, 242 Mich. 9, 217 N.W. 792, against a claim of excessiveness the Court pointed out among other factors that the plaintiff from necessity had abandoned his musical instruments and ambitions. These are the kind of things which are meant by life's enjoyments, and we believe that the foregoing Michigan decisions indicate that loss of life's enjoyments constitutes an element of compensable damages under the law of that State.

■ We are not prepared to say, however, that in event of a jury trial the law of Michigan authorizes the submission of loss of life's enjoyments to a jury as a separate claim from pain and suffering. The precise question before us is whether it is reversible error, in a case tried to the Court without a jury, for the District Judge to make distinct awards for pain and suffering and loss

of life's enjoyments. We do not believe this to be reversible error under the facts and circumstances of the present case. The principal objection to the awarding of damages for loss of life's enjoyments is a fear of speculativeness and duplication. See McAlister v. Carl, 233 Md. 446, 197 A.2d 140, 15 A.L.R.3d 496. Since we already have held that the loss is compensable in Michigan, the issue of speculativeness of the award is eliminated here. Review of the award will be facilitated by separating it from pain and suffering, thereby providing an additional safeguard against excessiveness. We believe that the experienced District Judge who heard this case was capable of distinguishing compensation for the infliction of pain and suffering from compensation for loss of life's enjoyments. We find no improper duplication in separating the amounts of the award in the present case. There was evidence to support each.

The railroad urges that the District Court, despite its awareness of the Michigan rule requiring reduction of future damages to their present worth, did not so reduce the damages, citing Rivers v. Bay City Traction & Electric Co., 164 Mich. 696, 128 N.W. 254, 131 N.W. 86, and Gowdy v. United States, 271 F. Supp. 733 (W.D.Mich.).

With respect to impairment of future earning capacity the District Court used a single figure of $2,500 per year for 35 years. If the rule requiring reduction was applied in the present case we have no way of ascertaining it from the findings of the District Court. Certain statements in the opinion would tend to indicate that it was not applied. With respect to the awards for pain and suffering and loss of life's enjoyments, there is no breakdown between the award for past and that for future increments. Again we have no way of knowing whether the rule was applied. The result is that we must vacate the judgment and remand the case for clarification as to the findings and a clear statement of whether and how the Michigan rule requiring reduction of future damages was applied. See Hatahley v. United States, 351 U.S. 173, 182, 76 S. Ct. 745, 100 L.Ed. 1065; Traylor v. United States, 396 F.2d 837 (6th Cir.).

The judgment of the District Court is vacated and the case is remanded for additional appropriate findings of fact and conclusions of law on the question of damages not inconsistent with this opinion.